UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHARTER COMMUNICATIONS, INC., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:05CV332 JCH |
| ) | |
| DAVID L. MCCALL, ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Charter Communications, Inc.'s ("Charter") Motion for Summary Judgment, filed July 27, 2005. (Doc. No. 29). The matter is fully briefed and ready for disposition.

## BACKGROUND

By way of background, Defendant David L. McCall ("McCall") was employed by Charter as Senior Vice President of Operations--Eastern Division, from January, 1999, until he resigned in January, 2003. While serving as a corporate officer, McCall, along with other parties, engaged in a practice called "managed disconnects." McCall was instructed by his superiors to refrain from disconnecting the cable television service of non-paying customers. Allegedly, the purpose of this practice was to inflate Charter's customer base artificially, thereby improving the financial figures reported at the end of the fiscal quarter.

In the summer of 2002, a number of federal securities class action lawsuits were filed against Charter and McCall, relating to various Charter accounting practices. The class action suits ultimately settled in mediation.

In July of 2002, the Department of Justice also began investigating the practice of "managed disconnects." On or about September 30, 2002, McCall entered into an Undertaking Agreement with Charter, in which Charter agreed to advance all of McCall's attorneys' fees and expenses incurred in defending the criminal charges and other proceedings. (Doc. No. 24.1). The Agreement was governed by Delaware law, and its language mirrored that of the Delaware Corporate Code, requiring that McCall had no reasonable cause to believe his conduct was unlawful. (Id.). Should it ultimately be determined that McCall was not entitled to indemnification, "any advance payments made by [Charter] on [McCall's] behalf in connection with any of the Proceedings as to which such a determination [was] made must be repaid." (Id.). From September, 2002, to July, 2003, more than $150,000.00 in legal fees and related expenses were advanced to McCall through his counsel.

On July 24, 2003, McCall, along with three other former Charter employees, was indicted for his participation in the scheme. (Doc. No. 30.2). The Indictment charged McCall with one count of conspiracy to commit wire fraud. (Id.). On July 25, 2003, McCall pled guilty to the one count under which he was charged. (Doc. No. 24.2). As part of his guilty plea, McCall stipulated that he knowingly and willfully participated in a scheme to defraud Charter's shareholders. (Doc. No. 24.3, P. 9).

Charter filed its Second Amended Complaint in this matter on June 22, 2005. (Doc. No. 24). In its Second Amended Complaint, Charter asserts McCall's stipulation in connection with his guilty plea constituted a breach of the Undertaking Agreement. Charter thus seeks repayment of the attorneys' fees previously advanced to McCall. On July 6, 2005, McCall filed his Answer to Second Amended Complaint, Affirmative Defenses, and Counterclaims ("Answer"). (Doc. No. 27). In his First Counterclaim, McCall seeks payment of accrued and unused sick leave. In his Second

Counterclaim, McCall seeks damages in the amount of the attorneys fees and expenses in the criminal case and other proceedings for which he has not been indemnified by Charter.

As stated above, Charter filed the instant Motion for Summary Judgment on July 27, 2005. (Doc. No. 29). In its motion, Charter seeks summary judgment on both its claims and McCall's counterclaims.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Id. at

255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### I. Motion For Summary Judgment On Charter's Claims In Second Amended Complaint

In its Motion for Summary Judgment, Charter first requests the Court to grant summary judgment in its favor on its Second Amended Complaint, entitling Charter to repayment of the fees and expenses advanced to McCall. As both the Undertaking Agreement and Charter's bylaws apply the Delaware Corporate Code, the Court will apply Delaware law to its examination. Section 145 of the Delaware Corporate Code provides the proper framework for an indemnification analysis. The applicable provisions are 145(a) and (c). Section 145(a) limits a corporation's ability to indemnify an officer as follows:

> A corporation shall have power to indemnify any person who was or is a party...to any threatened, pending or completed action, suit or proceeding, whether civil [or] criminal....by reason of the fact that the person is or was...an officer....of the corporation....against expenses (including attorneys' fees)....actually and reasonable incurred by the person in connection with such action, suit or proceeding if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the person's conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which the person reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that the person's conduct was unlawful.

8 Del. C. § 145(a). Section 145(c) delineates the situations in which a corporation is required to indemnify corporate officers by law:

> To the extent that a present or former director or officer of a corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in subsections (a) and (b) of this section, or in defense

> of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith.

8 Del. C. § 145(c). The Delaware Supreme Court dictates that this indemnification statute is not to be interpreted narrowly. See Stifel Fin. Corp. v. Cochran, 809 A.2d 555, 561 (Del. Super. 2002).

The Court will first examine if Section 145(c) of the Delaware Corporate Code requires Charter to indemnify McCall's costs, as a matter of law. According to Delaware law, if a defendant was party to an "action, suit or proceeding referred to in subsections (a) and (b)" by reason of the fact that he was an officer of the corporation, his employer must indemnify him against the expenses incurred if he was "successful on the merits or otherwise in defense of any....claim, issue or matter therein." 8 Del. C. § 145(c). It is undisputed that McCall was a corporate officer, and that he was involved in a lawsuit by reason of his position. The relevant question is whether Delaware law would consider a defendant who pled guilty to the only count of a criminal indictment under which he was charged, "successful," and thus entitled to indemnification by his corporate employer.

A guilty plea becomes a judgment of conviction when the court accepts the plea and sentences the defendant. Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed.1009 (1927) ("A plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction"). Under Delaware law, a conviction in a criminal matter is not success, for purposes of 8 Del. C. § 145(c). See Merritt-Chapman & Scott Corp. v. Wolfson, 321 A.2d 138, 141 (Del. Super. Ct. 1974) (emphasis added) ("In a criminal action, any result *other than conviction* must be considered success"). Thus, because McCall was not vindicated on the count under which he was charged, there is no mandatory indemnification under Section 145(c).[1]

---

[1] McCall asserts he must be considered partially successful in his defense, as he was only charged under one count of the Indictment, while others were charged in eight or more. McCall thus maintains he should be required to repay only a portion of the attorneys' fees Charter advanced on

The Court must next consider whether McCall nevertheless is entitled to indemnification under Section 145(a) of the Delaware Corporate Code. Under Section 145(a), a corporation is permitted to indemnify a corporate officer, even one who was found guilty, if his conduct fits within certain moral standards. 8 Del. C. § 145(a). This permissive indemnification may be made mandatory through bylaw or agreement, and Charter has done so. Specifically, Article 10.1 of Charter's bylaws states that employees will be indemnified "to the fullest extent authorized by the Delaware General Corporation Law," and this phrase obligates Charter to indemnify McCall if he met the applicable standard of conduct in subsection (a). (Doc. No. 37.4, P. 14).

Upon consideration, the Court finds McCall has not met the standard of conduct necessary to qualify for indemnification on this charge. In his plea agreement, McCall admitted that he, "did knowingly and willfully participate in a scheme to defraud Charter's stockholders." (Doc. No. 24.3, P. 9). In addition, McCall stated that he "knew that the purpose of [the managed disconnect process]....was to inflate Charter's quarterly growth in subscriber numbers that were intended to be reported to the public." (Id., P. 10). Given these admissions, McCall cannot now assert that he had no reasonable cause to believe his conduct was unlawful. McCall thus is not entitled to indemnification for the costs incurred in defending against the Indictment, and summary judgment is granted in favor of Charter on Counts I and II of its Second Amended Complaint.[2] McCall must repay the costs and attorneys' fees Charter advanced for McCall's defense in the criminal suit, in the amount of $152,743.68. (Doc. No. 30.3; Doc. No. 36, P. 4).

## II. Motion For Summary Judgment On McCall's Second Counterclaim

---

his behalf. McCall offers no support for this proposition, however, and upon consideration, the Court rejects the reasoning underlying McCall's position.

[2] Charter further is entitled to summary judgment on the portion of McCall's second counterclaim seeking further payment for attorneys' fees incurred in defending the criminal action.

In his second counterclaim, McCall seeks damages for Charter's alleged breach of contract in failing to pay his attorneys' fees. (Answer, PP. 7-8). As explained in Section I, supra, McCall is not entitled to reimbursement for monies spent in defending against the criminal charge. In his counterclaim, however, McCall also seeks reimbursement for monies expended in defending against the civil class action suits. Charter does not deny that McCall is entitled to reimbursement for monies reasonably expended as attorneys' fees in defending the civil suits. (Doc. No. 45, P. 2).

Upon consideration, the Court will dismiss the remaining portion of McCall's second counterclaim sua sponte, as at present it is not ripe for adjudication. In a recent opinion, the Eighth Circuit discussed the ripeness requirement, as follows:

> "The ripeness doctrine flows both from the Article III 'cases' and 'controversies' limitations and also from prudential considerations for refusing to exercise jurisdiction." *Nebraska Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1037 (8th Cir. 2000). The "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

Pub. Water Supply Dist. No. 10 of Cass County, Mo. v. City of Peculiar, 345 F.3d 570, 572 (8th Cir. 2003). In the instant case, an adjudication on the merits of this part of McCall's second counterclaim would certainly be premature, as it is unclear at this juncture if a disagreement even exists between the parties with respect to indemnification for McCall's expenses in defending the civil suits. See Pub. Water Supply Dist., 345 F.3d at 574 (internal quotations and citation omitted) (While, "[t]he precise line between ripe actions and premature actions is not an easy one to draw...," this case clearly is not ripe, "because the threat of injury is not 'certainly impending,' there is no hardship to [McCall] in denying review, and the development of additional facts would focus the dispute."). This Court will therefore dismiss the remaining portion of McCall's second counterclaim for lack of jurisdiction.

**III.    Motion For Summary Judgment On McCall's First Counterclaim**

In his first counterclaim, McCall seeks damages for Charter's alleged breach of contract in refusing to pay his accrued sick leave upon termination of employment. (Answer, PP. 6-7). In support of his counterclaim, McCall relies on the Severance Agreement he signed upon his resignation from Charter, which states in relevant part as follows:

> Charter will pay McCall all compensation (including unpaid salary attributable to the period prior to February 1, 2003, bonuses if any due to him for the year 2002, and accrued and unused vacation and sick leave), benefits and other payments due him through the effective date of his resignation.

(Doc. No. 30.10, P. 3). In its Motion for Summary Judgment, Charter seeks summary judgment on McCall's first counterclaim, alleging McCall's Employment Agreement and Charter's personnel policies do not provide that McCall was entitled to sick leave, let alone a payment reflecting accrued sick leave upon his termination. (Doc. No. 29, ¶ 5; see also Doc. Nos. 30.7, 30.8, 30.9).

Upon consideration, the Court will deny this portion of Charter's Motion for Summary Judgment. Specifically, the Court finds a genuine issue of material fact remains with respect to whether McCall is entitled to payment for accrued sick leave, especially in light of his assertion that he expressly negotiated for such payment as part of his Severance Agreement. (Doc. No. 36, PP. 15-16).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Charter Communications, Inc.'s Motion for Summary Judgment (Doc. No. 29) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Charter's Motion for Summary Judgment is **GRANTED** as to Counts I and II of Plaintiff's Second Amended Complaint (Doc. No. 24), and McCall is ordered to reimburse Charter for all monies advanced for the defense of the conspiracy charge, in the amount of $152,743.68.

**IT IS FURTHER ORDERED** that Charter's Motion for Summary Judgment is **DENIED** as to McCall's First Counterclaim, for Breach of Contract: Nonpayment of Sick Leave (Doc. No. 27).

**IT IS FURTHER ORDERED** that Charter's Motion for Summary Judgment is **GRANTED** as to the portion of McCall's Second Counterclaim for Breach of Contract: Nonpayment of Attorney Fees regarding Criminal Litigation (Doc. No. 27).

**IT IS FURTHER ORDERED** that the remaining portion of McCall's Second Counterclaim for Breach of Contract: Nonpayment of Attorney Fees regarding Civil Litigation (Doc. No. 27) is **DISMISSED** without prejudice.[3]

Dated this 18th day of November, 2005.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[3] Pursuant to this Order, the sole remaining claim in this suit is Defendant McCall's Counterclaim for Breach of Contract: Nonpayment of Sick Leave.